(165 App. Div. 771)

## In re KRAUSE.

(Supreme Court, Appellate Division, First Department. January 8, 1915.)

ATTORNEY AND CLIENT (§ 38*) — PROFESSIONAL MISCONDUCT — ACTS CONSTITUTING.

An attorney, who instituted for his client, within a week, an action for breach of promise, an action for breach of promise coupled with seduction, and an action for rape committed on different dates, and who obtained an order of arrest of defendant, who on the service thereof gave bail, and who obtained a criminal summons requiring defendant to appear before a magistrate, and who did not seek to serve the warrant until defendant was about to sail for Europe, and who after the return of defendant allowed the criminal charge to lapse, and filed an action for sodomy, was guilty of professional misconduct by abuse of process, though there was no evidence of an attempt to extort money from defendant; and in the absence of such evidence the court will merely suspend the attorney from practice for a specified period.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. § 38.*]

Proceeding to disbar Richard Krause, an attorney, for professional misconduct. On application to confirm report of referee sustaining charges of professional misconduct. Judgment of suspension ordered. See, also, 160 App. Div. 933, 145 N. Y. Supp. 1129.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Courtlandt Nicoll, of New York City, for petitioner.

Richard Krause, of New York City, pro se.

INGRAHAM, P. J. The charges of professional misconduct against the respondent are set forth in the report of the official referee. They arise out of various actions and proceedings instituted by the respondent, as attorney, for one Dorothy L. Von Huber against Frederic S. Mason, between May 31, 1912, and November 13, 1912. The respondent, as attorney for his client, served upon the said Mason five complaints. Four of these complaints were accompanied by summonses, and thus it appeared that four separate actions were commenced. One complaint was designated an amended complaint, without indicating to which of the actions it related. On June 26, 1912, the respondent applied to a city magistrate for a warrant for the arrest of Mason, which was refused; but a summons was issued requiring Mason to appear before the magistrate on June 28th. On the same day the respondent obtained an order of arrest in one of the actions against Mason, who was arrested and furnished bail. Mason left for Europe on June 27, 1912. The respondent, with his client, went to the steamer, apparently for the purpose of serving the criminal summons on Mason, requiring him to appear before the magistrate. Not finding Mason on the steamer, they left the summons on the ship for delivery to Mason, which was subsequently delivered to him at sea.

These various complaints illustrate how such charges are made to become more serious, when the defendant fails to respond at first. The first complaint was verified May 21, 1912, and was an action for breach of promise of marriage. There was no allegation of seduction or other reprehensible conduct on the part of the defendant, but simply that he had made a contract of marriage and had refused to carry it out, and judgment was demanded for $50,000. On the same day, and apparently at the same time, the respondent prepared another summons and complaint, alleging that the defendant represented to the plaintiff that he was sole and promised to marry her within a reasonable time; that, relying on the said promise, the plaintiff thereafter and during the year 1911 had sexual intercourse with the defendant; that the plaintiff was pregnant as the result of such intercourse, and demanded a judgment for $50,000; and that complaint was verified on the same day. The respondent also prepared another complaint, which alleged that on April 15, 1911, being the same day that the plaintiff had alleged in the other actions the defendant had promised to marry her, without the consent of the plaintiff, and against her will, and by the use of great force and violence, had carnal connection with the plaintiff, and in this complaint she demanded judgment for $50,-000. This complaint was sworn to on June 4, 1912, five days after the other two complaints were verified. The respondent also prepared another complaint against the defendant, alleging that on April 18th, three days after the promise of marriage and the other charge of rape. the defendant committed a rape upon the plaintiff, and for that she

asked the sum of $50,000. This complaint was verified on June 19, 1912. This latter complaint was described as an amended complaint, but as to which of the former complaints that had been prepared it was an amendment is not stated. Then on June 5, 1912, the respondent, as attorney for Von Huber, obtained an order of arrest from a justice of the Supreme Court, on which the defendant was arrested and held to bail in the sum of $500. The ground of arrest, as stated in the warrant, was that the action was to recover damages for a personal injury, to wit, the assault. Then the respondent prepared another complaint against the defendant, alleging that on or about April 15, 1911, the same day on which the promise of marriage was made, and the same day on which rape was alleged to have been committed, the defendant, without the consent of the plaintiff and against her will, had carnal connection with the plaintiff, and judgment was demanded in that complaint for $50,000. That complaint seems to have been verified on June 4, 1912. Mason not having responded to these various complaints and threatened arrest, the respondent prepared for his client another complaint, which seems to have been verified on November 18, 1912. There was involved in this action a charge of sodomy, and for that the plaintiff demanded $50,000. These complaints were all served on the defendant about the dates of their verifications. With the introduction of these various complaints, and proof of the service of this summons at sea, by means of sending it to Mason by letter, the petitioner rested.

The respondent was called as a witness, and testified that when he prepared these complaints and had them verified he believed them to be true. He explains the leaving of the summons for the defendant on shipboard by saying, when he received the summons on June 26, 1912, he went to the Brevoort House, where Mason resided, and searched for him, but did not find him; that on the following day he went with his client to the steamer at the foot of West Fifteenth street and went aboard the steamer for the purpose of serving the magistrate's summons upon Mason; that he could not find Mason on the steamer, and left the ship with his client; that at the request of his client he handed her the summons, and that she apparently put the summons in an envelope and handed the envelope back to the respondent, who addressed it to Mason and then handed it back to his client; that he and his client remained there until the ship sailed. He then says that the papers were left on the ship without his knowledge or consent, but he does not say what he understood his client was doing by inclosing it in an envelope and addressing it to Mason. Attempting to serve such a summons on a person just sailing for Europe, and especially leaving it so that he would get it at sea, when he could not respond to it, was clearly an abuse of process. He had already had Mason arrested and held to bail, and the service of such a summons under the circumstances could have served no good purpose. It is ridiculous to say that under the circumstances the leaving of the summons to be served on Mason after the ship sailed was without the knowledge or consent of the respondent. From the respondent's testimony it appeared that when Mason returned from Europe he drop-

ped the prosecution for rape, and then had Mason arrested on this sodomy charge. On cross-examination, what this respondent did not know, when asked about the conditions existing, is somewhat astounding. Subsequently, after Mason returned, he obtained a warrant for the arrest of Mason on the sodomy charge, and a magistrate held him for the grand jury, but did not require bail; but when the case was presented to the grand jury they refused to find an indictment, and Mason was discharged.

My opinion in this case cannot be better expressed than by quoting that of the official referee:

"Notwithstanding all that has thus far been stated, and notwithstanding the explanations given by the respondent, the course of conduct he pursued towards Dr. Mason cannot be justified, as he attempts to do, by a reference to his duties towards his client. No known standard of ethics compels or permits an attorney to be as oppressive towards a defendant as his client, the plaintiff, wants him to be. It appears that, in addition to the five actions instituted, he procured on June 5, 1912, an order of arrest in one of them, and although the summons and complaint in said action were served on June 5, the order of arrest was not executed until June 26, 1912. This was the day before Dr. Mason was to sail for Europe. Dr. Mason having promptly given bail, the respondent went to a magistrate's court and procured a detective to try and arrest Mason for rape. As the detective could not find him, the respondent applied to the magistrate for a warrant. This was refused, and the respondent finally obtained a criminal summons, requiring Mason to appear before the said magistrate's court on the 28th of June, 1912, at 9 o'clock a. m., to answer the charge of rape. On the morning of the last-mentioned day the respondent, with his client, went on board of the steamer Provence in the effort to serve this summons; but Dr. Mason could not be found. After his return from Europe the criminal charge against him for rape was allowed to lapse, and in place thereof the summons and complaint in the action based on sodomy were served upon him, and in addition a criminal prosecution for sodomy instituted against him. In the latter, as already shown, the respondent and his client succeeded to have Dr. Mason held to await the action of the grand jury, although no indictment was subsequently found. The conduct of the respondent throughout these proceedings transgressed the limits of permissible prosecution, and constituted notorious persecution. * * * Indeed, the conduct of the respondent throughout the proceedings seems to have been just as remarkable as the conduct of his client. For brevity's sake it may be summed up as follows: Instead of giving expert and disinterested advice upon each matter brought from time to time to his attention after an examination into its merits in the light of principles and precedents and the consideration of the chances of probable success, as a true lawyer would have done, and being mindful that a true lawyer will not do a mean thing for money, he in each instance, without much thought or care for consequences, accepted her uncorroborated statement as true, and without further investigation at once commenced legal proceedings thereon, and thus assisted her as a simple-minded practitioner in the furtherance of her revengeful project and purpose. His claim that in each instance he really believed her statement to be true, and that he acted thereon at her behest, cannot, therefore, be accepted as an excuse or justification. In view of the multiplicity of the proceedings thus commenced, which led to an unscrupulous persecution of Dr. Mason, as hereinbefore detailed, the acts of the respondent amounted to highly reprehensible misconduct on the part of the respondent in his office as an attorney and counselor at law."

If the respondent really in good faith believed these various tales of his client when told to him, he certainly was not justified in commencing additional actions as each new story was told, without disposing of the previous action commenced. His whole conduct certain-

ly justified the inference, from these successive charges, increasing in seriousness as the defendant failed to respond, or at least justified a suspicion, that the respondent was engaged with his client in an attempt to blackmail Mason. Apparently these complaints, immediately after they were prepared and verified, were filed in the office of the county clerk. The attempt to serve a summons on a man about to sail for Europe to appear before a magistrate after the steamer had sailed was in itself an indefensible proceeding. The respondent had known for nearly a month about the rape charge, and yet he waited until the day before the defendant was about to sail for Europe, and went on the steamer to serve the summons just before the steamer sailed, and then, not finding the person charged, he left it for him to be delivered after the steamer had sailed.

We think the conduct of the respondent as found by the referee constitutes serious professional misconduct which should receive our condemnation. The abuse of process in seeking to enforce charges of this character must be understood as constituting professional misconduct which will justify discipline. It is not necessary to justify the inference that there should be express proof that such abuse of process was intended to extort money from a defendant against whom the charge is made. Here there were commenced against a defendant three actions in less than a week, and in these three actions there were four complaints. In these four complaints the defendant was first charged with a simple breach of promise of marriage; in the second, with a breach of promise of marriage, coupled with seduction; in the third, with the commission of rape on the 15th of April; in the fourth, with the commission of rape on the 18th of April; and then, these charges not having produced the desired result, in the subsequent November another summons and complaint was served, charging the defendant with sodomy. In addition there were an order of arrest, an application for a warrant, and a criminal summons, and finally a warrant. Certainly, if the respondent had simply desired to protect the interests of his client, he would have ascertained from her at his first interview just what her charge against the defendant was, and then brought a proper action to redress any injury that he was justified in thinking she had sustained, and prosecuted that action in an orderly and legal manner. The conduct of the respondent certainly justifies more than a suspicion that these various proceedings were not for the real protection of his client, but for an ulterior purpose.

I do not think we are justified in overlooking this offense; but in the absence of any express evidence of an attempt to extort a settlement from Mason we are justified, in this case, instead of disbarring the respondent, in suspending him from practice for one year, and until the further order of the court, with leave to the respondent to apply for reinstatement at the expiration of such period, upon showing that he has actually abstained from practice and has otherwise properly conducted himself. All concur.